IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TOM LEE BROWN

    Petitioner,

v.                                                             CIV NO. 03-1321 MV/ACT

LANE BLAIR Warden, and
PATRICIA MADRID, Attorney General
of the State of New Mexico,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on the Respondents' Motion to Dismiss the Petition for a Writ of Habeas Corpus. (Doc. No. 11). The Motion was filed on December 30, 2003. Petitioner responded on March 30, 2004. (Doc. No. 13). The United States Magistrate Judge, having reviewed the Petition, the Motion to Dismiss, the Memorandum in Support, the Response, the Answer, and the accompanying Exhibits finds that the Motion to Dismiss is well taken and recommends that it be GRANTED and the Petition For a Writ of Habeas Corpus be DENIED ON THE MERITS.

## PROPOSED FINDINGS

## PROCEEDINGS AND PLEADINGS

1. Petitioner is currently incarcerated in a New Mexico correctional facility pursuant to a Judgment and Order of the Third Judicial District Court, County of Doña Ana, State of New Mexico in case No. CR 2001-0156. (Answer, Exhibit A). Petitioner is proceeding *pro se* and *in forma pauperis*.

2. Petitioner was convicted on January 7, 2002, when a jury found Petitioner guilty of the offenses of Forgery, a third degree felony, and Fraud, a fourth degree felony. The offenses occurred on or about January 20, 2001. (Answer, Exhibit A).

3. Petitioner was also found to be a Habitual Criminal Offender with these prior felony convictions:

    a. On May 26, 1977, Forgery of a Credit Card, Cause No. CR-40327, Superior Court, San Diego County, California; (Answer, Exhibit A).

    b. On September 11, 1989, Trafficking in Cocaine, Cause No. CR 89-93, Third Judicial District, Doña Ana County, New Mexico; (Answer, Exhibit A).

    c. On July 5, 1995, Possession of Cocaine, Cause No. CR 95-213, Third Judicial District, Doña Ana County, New Mexico. (Answer, Exhibit A).

4. Petitioner was sentenced to serve a term of three (3) years followed by two (2) years of parole on the Forgery conviction, enhanced by eight (8) years under the Habitual Offender Act, NMSA §31-18-17. (Answer, Exhibit A).

5. Petitioner was sentenced to serve a term of eighteen (18) months followed by one (1) year of parole on the Fraud conviction, enhanced by eight (8) years under the Habitual Offender

Act, NMSA §31-18-17. (Answer, Exhibit A).

6. The sentences are to be served concurrently resulting in a sentence of eleven (11) years followed by two (2) years on parole. (Answer, Exhibit A).

7. Petitioner filed a timely appeal to the New Mexico Court of Appeals. His docketing statement included three issues which are relevant to this Petition for a Writ of Habeas Corpus: 1) that there was insufficient evidence to convict the Defendant; 2) that no members of Defendant's race, African-American, were in the venire pool thus depriving Defendant of his right to due process; and 3) that the Defendant's convictions of both fraud and forgery arising out of the same transaction violated his right to be free from double jeopardy. (Answer, Exhibit C).

6. The New Mexico Court of Appeals proposed summary affirmance. (Answer, Exhibit D). Petitioner's appellate counsel filed a Memorandum in Opposition. (Answer, Exhibit E).

7. The New Mexico Court of Appeals affirmed Petitioner's conviction on July 29, 2002 in a written opinion. (Answer, Exhibit F).

8. Petitioner filed a timely Writ of Certiorari in the Supreme Court of New Mexico through his appellate counsel. (Answer, Exhibit G). At first, certiorari was granted on two of the issues - whether the passing of a forged instrument for value can support convictions for both forgery and fraud without offending double jeopardy and whether the evidence supported the defendant's convictions. (Answer, Exhibit J).

9. The two issues were briefed by both sides. On May 16, 2003 the Supreme Court of New Mexico, after considering the briefs, issued an order quashing the writ of certiorari. (Answer, Exhibit N).

10. On July 14, 2003, Petitioner filed a Petition for a Writ of Habeas Corpus in the Third

3

Judicial District Court, County of Doña Ana, State of New Mexico. (Answer, Exhibit Q). The Petition presented six claims:

A) Petitioner was denied his state and federal constitutional rights to the effective assistance of counsel both at trial and on appeal;

B) Petitioner was denied his state and federal constitutional rights because of prosecutorial misconduct;

C) Petitioner was denied his state and federal constitutional rights because there was insufficient evidence to convict him of both Forgery and Fraud;

D) Petitioner was denied his state and federal constitutional rights to be free from double jeopardy because he was convicted of both Forgery and Fraud arising from one transaction;

E) Petitioner was denied his state and federal constitutional rights to due process because the venire panel and the selected jury did not contain any members of Petitioner's race which is African American; and

F) Petitioner was sentenced in violation of NMSA §31-18-17, the Habitual Offender Act, because one of the felony convictions upon which the trial judge relied when enhancing his sentence was over twenty-five (25) years old.

Petitioner supported his six claims with facts and offers of proof. (Answer, Exhibit Q).

11. New Mexico District Court Judge Stephen Bridgforth, the trial judge, denied the Application for a Writ of Habeas Corpus. The Order by Judge Bridgforth read in part,

> The Defendant bases his claim for relief on the theory that his trial counsel was ineffective when he failed to introduce testimony and evidence tending to show that the defendant did not write or sign the forged check and on a claim of prosecutorial misconduct. It is not necessary for the defendant to have written or signed the forged check in order for the jury

4

to find him guilty of fraud or forgery. See U.J.I. 14-1644 and 14-1640. The defendant's proffer is not directly exculpatory and, had it been introduced into evidence, may well have prejudiced the jury against the defendant. This Court cannot say that there is no plausible, rational strategy or tactic that would explain the conduct of counsel. (citation omitted).

The defendant was fully aware of the federal investigation concerning the defendant. It is not misconduct for the prosecution to fail to present evidence during trial, only to conceal exculpatory evidence from the defense. (citation omitted).

The Court concludes:
    1. The defendant has failed to make a *prima facie* showing of ineffective assistance of counsel.
    2. The defendant has failed to make a *prima facie* showing of prosecutorial misconduct.

(Answer, Exhibit R).

12. Petitioner filed a Petition for a Writ of Certiorari with the Supreme Court of New Mexico. Petitioner presented the same claims and supporting facts as he had below. The Petition was denied. (Answer, Exhibits S and T).

13. On November 17, 2003, Petitioner filed his timely *pro se* federal Petition for a Writ of Habeas Corpus. (Doc. No. 1). The Petition presented the same six claims as he originally presented in his state Application for a Writ of Habeas Corpus with supporting facts. (Doc. No.1).

14. Respondent answered and moved to dismiss on December 30, 2003. (Docs. No. 10 and 11).

## DISCUSSION

15. The federal statute governing applications for a writ of habeas corpus, 28 U.S.C. §2254, states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

16. All six claims were adjudicated by the state courts below in either the direct appeal or in the Application for a Writ of Habeas Corpus. Two of the issues, Petitioner's claim of ineffective assistance of counsel at the trial level and his claim of prosecutorial misconduct were addressed on the merits by the trial judge in the Application for a Writ of Habeas Corpus. The trial judge found that Petitioner had failed to make a *prima facie* showing on these two claims. The other four claims - the insufficient evidence claim, the double jeopardy claim, the venire panel and the jury claim, and the Habitual Offender Act claim - were all addressed on the merits by the New Mexico Court of Appeals and decided adversely to the Petitioner. The Supreme Court of New Mexico denied certiorari on all six claims of the Petitioner in his Application for the Writ of Habeas Corpus.

17. The issue before this Court is whether the adjudications on the merits below resulted in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law or resulted in an unreasonable determination of the facts.

## CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

18. Clearly established federal law holds that to establish the ineffective assistance of counsel, Petitioner must establish both that his attorney's performance was deficient and that this

deficient performance caused prejudice to the Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is attorney conduct which is outside "the wide range of competence demanded of attorneys in criminal cases." *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996). To establish prejudice, Petitioner must show that absent his attorney's errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Wiggins v. Smith*, _ U.S. _ , 123 S. Ct. 2527, 2535-36 (2003).

19. Petitioner asserted that his counsel failed to adequately investigate this matter and omitted certain testimony. Petitioner asserts that a Maria Carillo, who owed the Petitioner money, could have testified that she gave Petitioner's wife the check in question already filled out. Petition asserts that a federal investigator could have testified that Petitioner did not sign the check in question. Petitioner also asserts that his counsel allowed Manuel Gonzales, the person selling the car to Petitioner, to give contradictory testimony regarding a contract between the Petitioner and Mr. Gonzales. Further, Petitioner asserts that his counsel did not oppose the investigating officer's testimony who testified that Petitioner had confessed nearly a year earlier that he knew the check was forged.

20. The evidence presented at Petitioner's one day trial was as follows:

Petitioner purchased a car from Bertha Gonzales. Ms. Gonzales did not speak English so her brother Manuel Gonzales negotiated the sale.

Mr. Gonzales testified at trial through an interpreter. He testified that his sister's car had been parked by the side of the road with a "for sale" sign in the window. Petitioner and his wife told Mr. Gonzales they wished to purchase the car. The car was registered in Mexico so the two men discussed how they would acquire the appropriate paperwork. Petitioner told Mr. Gonzales

7

his "boss" owed him money and that he would go to his "boss" to get a check to pay for the car. Mr. Gonzales and his sister got in a car and followed Petitioner and his wife in their car to an office of an attorney. The attorney was representing Petitioner in a civil matter.

Petitioner and his wife arrived at the attorney's office before Mr. Gonzales and his sister did. Petitioner had a check in his hand made out to Mr. Gonzales in the agreed purchase amount. Petitioner said he had just received the check. Mr. Gonzales asked the legal secretary in the office to examine the check and call the bank to see if it was valid. She called the bank and was told the check was not covered by sufficient funds. Mr. Gonzales testified that Petitioner assured Mr. Gonzales that the check would be covered the next day. The Gonzaleses then turned the car over to Petitioner and his wife.

The check given to Mr. Gonzales by Petitioner was drawn on the account of Douglas Osborne. Mr. Osborne, an elderly man, testified that Petitioner had worked for him harvesting pecans and had been in his truck where Mr. Osborne kept his checks. Mr. Osborne testified that he never signed the check or authorized another to sign the check for him.

A police investigator also testified. He stated that Petitioner had told him that Petitioner's wife had stolen the check and had filled it out and that Petitioner had used the check to purchase the car.

21. The jury was instructed that to prove the crime of forgery, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

    1) The defendant gave or delivered to Manuel Gonzales a check knowing it to have a false signature intending to injure, deceive or cheat Manuel Gonzales or another,

    2) This happened in New Mexico on or about the 22nd of January, 2001.

22. The jury was instructed that to prove the crime of fraud, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

   1) The defendant, by any words or conduct, misrepresented a fact to Manuel Gonzales intending to deceive or cheat Manuel Gonzales;

   2) Because of the misrepresentation and Manuel Gonzales' reliance on it, defendant obtained an Oldsmobile Cutlass;

   3) This Oldsmobile Cutlass belonged to someone other than the defendant; and

   4) This Oldsmobile Cutlass had a market value of over $250.00;

   5) This happened in New Mexico on or about the 22nd day of January, 2001.

23. To prevail on a claim of ineffective assistance of counsel, Petitioner must show that there is a reasonable probability that the outcome of his trial would have been different had his counsel presented this evidence. *Strickland v. Washington*, 466 U.S. 668, 695 (1984). As the trial judge found, the testimony of Maria Carillo, the testimony of the federal investigator and the testimony concerning the contract to purchase the car would not be exculpatory. The State did not need to prove that Petitioner signed the check in question in order for him to be convicted by the jury of forgery. The State merely needed to prove that Petitioner knew that the check had a false signature and intended to injure, deceive or cheat Mr. Gonzales.

24. The assertion that Maria Carillo's testimony would have proven that she stole and forged the check would not have changed the result of his trial. The issue before the jury on the forgery claim was not whether Petitioner signed or filled out the check. Likewise, the assertion that the results of the federal investigation which allegedly would have shown that Petition did not fill out or sign the check would not have changed the result of the trial.

25. Petitioner also asserts that his counsel allowed Mr. Gonzales to give contradictory evidence regarding the contract (apparently to purchase the car) and that his counsel never obtained a copy of the contract.  However, Petition fails to show how a copy of the contract or further testimony of Mr. Gonzales would have led the jury to a reasonable doubt of his guilt.  The issue before the jury was not the contract to purchase to car but the forged check used to purchase the car.  None of this evidence tends to show that there is a reasonable probability that outcome of his trial would have been different had counsel presented this evidence. *Strickland v. Washington*, *supra.*

26. Lastly, Petitioner asserts that he received ineffective assistance of counsel because his attorney allowed the investigating officer to testify as to an admission made by Petitioner. The admission apparently was never recorded or put into writing.  Counsel for the Petitioner is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington, supra* at 690.  The distorting effects of hindsight as well as the Petitioner's replaying the entire trial in his mind, will undoubtedly convince him that his counsel's performance was deficient and if only his attorney had asked this question or objected to that statement, the outcome of the trial surely would have been different.  That, however, is not the standard by which this Court reviews Petitioner's claim of ineffective assistance of counsel.  Petitioner must prove that his counsel's performance was deficient.  The presumption is that counsel's decisions and performance fell within the wide range of reasonable professional assistance and an admission against interest, whether recorded or not, is admissible against the Petitioner.  The Petitioner is unable to point to any conduct on the part of his attorney, including the decision not to oppose the testimony of the investigator, which this

Court can even remotely begin to consider as evidence of ineffective assistance of counsel.

27. Petitioner's claim of ineffective assistance of counsel at the trial level is denied because his supporting facts do not establish either that there was a reasonable probability that the outcome of his trial would have different or that his counsel rendered anything less than reasonable professional assistance.

28. Petition's claim of ineffective assistance of counsel at the appellate level is denied because Petitioner failed to include any facts to support his claim.

CLAIM OF PROSECUTORIAL MISCONDUCT

29. Petitioner claims that his constitutional rights were violated because the prosecution knew of an investigation conducted by the Veteran's Administration which concluded that Petitioner had not signed or endorsed this check or some other VA checks (which apparently were cashed while Petitioner was awaiting trial) and yet did not present this "exculpatory evidence". Again, the issue before the jury was not whether Petitioner had signed or even filled out the check in question. The prosecution's theory of the case on the forgery cause of action was that someone other than the owner of the check had filled out, signed and endorsed the check, that Petitioner knew that the check had been forged, and that Petitioner passed the check on to Mr. Gonzales with the intent to injure, deceive or cheat him.

30. To prevail on his claim of prosecutorial misconduct, Petitioner must first show that there was indeed prosecutorial misconduct and secondly must show that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process". *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In this case, however, the Court need not

even approach the due process inquiry. The decision not to present the VA evidence was not prosecutorial misconduct. It was not exculpatory evidence and therefore the prosecution was under no requirement to present this evidence.

31. Petitioner's claim that his due process rights were violated because of prosecutorial misconduct is denied on the grounds that he has failed to establish any prosecutorial misconduct at his trial.

CLAIM OF INSUFFICIENT EVIDENCE TO SUPPORT HIS CONVICTION

33. Petitioner's third claim is that there was insufficient evidence to support his conviction. Petitioner's application gave his supporting facts and arguments. This issue was raised on direct appeal to the New Mexico Court of Appeals which reviewed the evidence to determine whether substantial evidence existed of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt as to each essential element of the crimes charged. (Answer, Exhibit D). The Court of Appeals determined in both its Proposed Summary Disposition and its Memorandum Opinion that there was substantial evidence to support the Petitioner's convictions on both the forgery and the fraud crimes and that Petitioner had not presented any additional facts or arguments in support of this claim. (Answer, Exhibits D & F).

34. This claim has been adjudicated on the merits by the state court below. Therefore in order to prevail on his claim that there was insufficient evidence to support his convictions, the Petitioner must demonstrate that the New Mexico state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". Clearly established federal law states, as does New Mexico

law, that the question before the reviewing court on a sufficiency of evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord, State v. Apodaca*, 118 N.M. 762, 887 P. 2d 756 (1994).

35. The decision below finding that there was sufficient evidence to support the Petitioner's convictions on forgery and fraud is not contrary to clearly established federal law. Nor does the decision below involve an unreasonable application of clearly established federal law. The New Mexico Court of Appeals reviewed the evidence in the light most favorable to the prosecution and found that there was sufficient evidence to establish that Defendant passed a forged check knowing that the signature was forged, that Defendant knew the check was invalid when he gave the check to Mr. Gonzales in exchange for the car, that Defendant intended to deceive or cheat Mr. Gonzales, that Defendant had made a misrepresentation of fact upon which Mr. Gonzales relied and that Defendant received an item of value in return. (Answer, Exhibit D, pgs. 2-3). All the essential elements of the crimes of forgery and fraud were supported by either direct or circumstantial evidence from which a rational trier of fact could find that each element had been proven beyond a reasonable doubt.

36. Petitioner's claim that there was insufficient evidence to support his convictions of forgery and fraud is denied. Petitioner is unable to demonstrate that the adjudications below on this issue are either contrary to or involve an unreasonable application of clearly established federal law.

## CLAIM OF DOUBLE JEOPARDY

37. Petitioner claims that his convictions on both the crimes of forgery and fraud constitute double jeopardy. This issue was also presented on direct appeal to the New Mexico Court of Appeals which held that Petitioner's right to be free from double jeopardy was not violated when he was convicted of both forgery and fraud in this case. (Answer, Exhibit F).

38. To prevail on a claim which has been decided on the merits in the state courts below, the Petitioner must demonstrate that the state court's adjudication resulted in a decision that was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law.

39. The New Mexico Court of Appeals determined that even though the conduct underlying the two convictions was unitary, arising from one transaction, that alone does not establish a double jeopardy violation. The Court must also determine whether the legislature intended to create separately punishable offenses. *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). The New Mexico Court of Appeals concluded that the elements of the two crimes are separate and require different findings of fact by the jury. To find the Petitioner guilty of forgery, the jury had to find that the Petitioner knowingly passed a forged instrument and intended to injure, deceive or cheat another. To find the Petitioner guilty of fraud, the jury had to find that the Petitioner made a misrepresentation of fact that was relied upon by another to his detriment and that Petitioner received something of value because of that reliance. (Answer, Exhibit F and Jury Instructions contained in Exhibit E). The prosecution argued that the misrepresentation of fact made to Mr. Gonzales was the Petitioner's representation that the check came from his "boss". The prosecution also argued that Mr. Gonzales relied upon this

14

misrepresentation to his detriment.

40. Looking to the elements of each crime, the New Mexico Court of Appeals held "that the legislature intended that there be two punishable offenses for the actions taken by the Defendant". (Answer, Exhibit F, page 3). The sole question before this Court is whether the New Mexico Court of Appeals decision holding that Petitioner was not subject to double jeopardy claim was contrary to clearly established federal law or involved an unreasonable application of clearly established federal law.

41. The prohibition against double jeopardy in the Fifth Amendment of the United States Constitution, applicable to the states by the Fourteenth Amendment, prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 771, 717 (1969). The legislature of New Mexico determines which criminal offenses are punishable in this state and prescribes the punishments imposed upon those found guilty of criminal offenses. The courts' role is to determine, using the canons of statutory construction, whether the legislature intended multiple punishments for the offenses of which the Petitioner has been convicted. *Whalen v. United States*, 445 U.S. 684, 688-89 (1980).

42. An oft-cited rule of construction is that if each offense arising out of the same criminal transaction requires proof of a fact which the other offense does not, this is evidence that the legislature intended for each offense to be treated separately and intended a separate punishment for each offense. *Blockburger v. United States*, 284 U.S. 229, 304 (1932); *Whalen v. United States, supra*. This is the test which the New Mexico Court of Appeals applied to the facts of this case finding that the offenses of fraud and forgery each required a proof of a separate element which the other offense did not. Thus the New Mexico Court of Appeals concluded that the

15

legislature intended to authorize separate punishments for the two crimes of forgery and fraud and that Petitioner's Fifth Amendment right to be free from double jeopardy was not violated.

43. The state court decision below is not contrary to clearly established federal law. Nor did it apply clearly established federal law unreasonably to the facts of this case. Petitioner has failed to establish his claim that his Fifth Amendment right to be free from double jeopardy was violated.

CLAIM OF DUE PROCESS VIOLATION IN THE COMPOSITION OF THE VENIRE POOL

44. Petitioner asserts that his due process rights to a fair and unbiased jury were violated because there were no jurors of his race, African American, in the venire pool and subsequently in his petit jury. Petitioner raised this argument in his direct appeal to the New Mexico Court of Appeals which held that Petitioner's due process rights had not been violated.

45. The New Mexico court recognized that the State may not exclude members of a defendant's race from the jury venire on account of race. *State v. House*, 127 N.M. 151, 978 P.2d 967 (1999). However, the New Mexico court found that Petitioner had presented no evidence either during jury selection at the trial or during appeal that there was an express exclusion of African-Americans from the venire pool. *See, Taylor v. Louisiana*, 419 U.S. 522 (1975).

46. Clearly established federal law states that to prove a due process violation of the fair cross section requirement of representation in the venire pool, the Petitioner must show 1) that the group alleged to be excluded is a distinctive group in the community, 2) that the representation of this group in venires from which juries are selected in is not fair and reasonable in relation to the number of such person in the community, and 3) that this underrepresentation is

16

due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357 (1979); *accord, State v. Neely*, 112 N.M. 702, 819 P.2d 249 (1991). The New Mexico Court of Appeals applied this test and determined that Petitioner was unable to show that there was a systematic exclusion of African-Americans from the venire pool.

47. Petitioner has presented additional arguments to this Court in support of this claim. He contends that using voter registration rolls and motor vehicle registration discriminates against African-Americans because they are less likely to vote for lack of education and less likely to register a vehicle at the Motor Vehicle Department for lack of money to buy a vehicle. This evidence is still not evidence of a <u>systematic exclusion</u> of African-Americans from the venire pool which the United States Supreme Court has held necessary to prove a prima facie case of a violation of the fair cross section requirement of the Sixth Amendment. *See, Taylor v. Louisiana, supra; Duren v. Missouri, supra; State v. Lopez*, 96 N.M. 456, 631 P.2d 1324 (Ct. App. 1981), *cert denied* (1981).

48. The decision below by the New Mexico Court of Appeals finding that the Petitioner's due process rights to a jury composed of a fair cross section of the community were not violated is not contrary to clearly established federal law. Nor does the decision unreasonably apply clearly established federal law to the facts of this case. Petitioner's additional evidence as to the reasons behind the purported underrepresentation of African-Americans in the venire pool do not meet the requirements for establishing a prima facie case of systematic exclusion of a distinctive group of the community from jury service. Petitioner's claim for a violation of his due process rights because of the composition of the venire pool is denied.

# HABITUAL OFFENDER ACT

49. Petitioner claims that his sentence, which was enhanced by eight (8) years under the Habitual Offender Act, NMSA §31-18-17, in effect at the time of his sentence, was illegal. Petitioner argues that the sentencing judge mistakenly found that he had been convicted of three previous felonies under the Habitual Offender Act when the sentencing judge included a 1977 California felony conviction when determining Petitioner's prior felony convictions.

50. This claim was addressed by the New Mexico Court of Appeals which found that the issue was "totally without merit as there is no limitation in the habitual offender statute regarding the age of prior convictions." (Answer, Exhibit F). The New Mexico Court of Appeals found that the Habitual Offender Act, in effect at the time of Petitioner's sentencing, did not limit the definition of "prior felony conviction" by when the conviction took place.[1]  Therefore, the Court found, it was not error for the sentencing judge to include the 1977 California felony conviction in determining that Petitioner had been convicted of three prior felonies.

51. A state court's interpretation of a state law is a matter of state law binding upon this court in a habeas corpus proceeding. *Chapman v. LeMaster*, 302 F. 3d 1189 (10th Cir. 2002). Moreover, the statutory language prior to the July 1, 2002 amendment was clear - Petitioner's 1977 conviction was to be included in his record of prior felony convictions. Petitioner cannot prevail on this claim that the enhancement of eight years under the Habitual Offender Act was illegal.

---

[1] The Habitual Offender Act, NMSA §31-18-17, was amended effective July 1, 2002, and placed some time limitations on the definition of prior felony convictions. The amendment took place after Petitioner was sentenced in this case.

## CONCLUSION

The six claims presented by Petitioner have been addressed on the merits by the state courts below either in the direct appeal of his conviction or in his state habeas corpus proceeding. Having reviewed the state court decisions below, this Court finds that the decisions below are not contrary to clearly established federal law nor involve an unreasonable application of clearly established federal law. The Court recommends that the Petitioner's Application for a Writ of Habeas Corpus be DENIED ON THE MERITS and that the Respondent's Motion to Dismiss the Petitioner's Application be GRANTED.

## NOTIFICATION

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections to with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1). A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE